# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANA POLOCENO, Individually and As Next Friend of A.I., a Minor | § § § § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-1284-S |
| | § § | |
| DALLAS INDEPENDENT SCHOOL DISTRICT, KEENAN WASHINGTON, BENJAMIN DICKERSON, AND DIANNE BACHAND | § § § § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Dallas Independent School District's ("DISD") Motion to Dismiss [ECF No. 29], Defendant Keenan Washington's ("Washington") Motion to Dismiss [ECF No. 31], and Defendants Benjamin Dickerson ("Dickerson") and Dianne Bachand's ("Bachand")[1] Motion to Dismiss [ECF No. 34]. For the reasons stated below, the Motions are granted.

### I. BACKGROUND

Plaintiff Ana Poloceno ("Plaintiff") brings this case for alleged constitutional violations related to injuries sustained by her daughter, A.I., as a result of disciplinary punishment at school.

At the time of the incident giving rise to this lawsuit, A.I. was an 11-year-old student at Edward H. Cary Middle School, which is part of DISD. Am. Compl. ¶ 35. Washington was a physical education ("P.E.") coach at the school and coached A.I. during her P.E. class. *Id.* ¶ 36. If a student did not "dress out," or wear proper gym clothes, for P.E. class, Washington allegedly would punish that student by requiring him or her to do "ceiling jumps." *Id.* ¶ 38. A ceiling jump involves squatting

---

[1] Bachand is the individual referred to as "Unknown Nurse" in the Amended Complaint. *See* Dickerson and Bachand's Mot. to Dismiss 1.

down with both hands and hips to the floor, then jumping up with one's hands toward the ceiling. *Id.* ¶ 39. According to Plaintiff, this punishment started at the beginning of the school year and grew more intense as the year progressed. *Id.* ¶ 40.

By April of 2016, a student who failed to wear gym clothes allegedly was required by Washington to do 260 ceiling jumps. *Id.* ¶ 41. On April 15, 2016, A.I. did not wear gym clothes to P.E. class. *Id.* ¶ 45. According to Plaintiff, "Washington forced A.I. to perform approximately 260 ceiling jumps without taking a break as a form of . . . disciplinary punishment." *Id.* ¶ 50.

After completing the ceiling jumps, A.I. allegedly felt "faint and weak" the rest of the day. *Id.* ¶ 51. "[F]or the next few days, A.I. stayed in bed as she was unable to bend her legs to walk. Every day after the incident, A.I. required assistan[ce] from her mother . . . to eat and use the restroom." *Id.* ¶ 52. A.I.'s condition continued to worsen, leading her to make an appointment with her family doctor. *Id.* ¶¶ 53-54. The doctor "discovered some concerning blood results" and told Plaintiff to take A.I. to Medical City Children's Hospital for Treatment. *Id.* ¶ 54. The doctors at the hospital diagnosed A.I. with rhabdomyolysis, which is a breakdown of muscle tissue. *Id.* ¶ 57. The doctors allegedly concluded that A.I. was suffering from rhabdomyolysis "due to excessive burpees done at school." *Id.* A.I. spent almost a week in the hospital. *Id.* ¶ 58.

According to Plaintiff, A.I.'s injury "could have been avoided[,] as a number of female students had previously gone to [Bachand] with injuries sustained" as a result of doing ceiling jumps. *Id.* ¶ 5. "Moreover, [Dickerson] also knew about the problem, yet neither he nor [Bachand] did anything to address the problem." *Id.*

After this incident, Child Protective Services and DISD investigated Washington. *Id.* ¶ 59. DISD's investigator found violations of student discipline, corporal punishment, and student welfare and wellness policies. *Id.* ¶ 60.

Based on the foregoing, Plaintiff brought § 1983 claims against DISD, Washington, Dickerson, and Bachand, alleging that they violated A.I.'s constitutional rights. Plaintiff also brought a claim against DISD under Title IX and a claim against Washington under Texas Education Code § 22.0511.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the

3

plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

## III. ANALYSIS

### A. *DISD's Motion to Dismiss*

#### i. *Section 1983 Claims*

To state a § 1983 claim, Plaintiff must "(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (citations omitted). To ascribe liability to DISD, which is considered a local governmental unit for § 1983 purposes, Plaintiff must also allege that an "official policy or custom" of DISD "was a cause in fact of the deprivation of rights inflicted." *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). DISD "may not be held liable under § 1983 under a theory of *respondeat superior*." *Id.* (citations omitted).

##### a. *Constitutional Violations*

"[W]ithout an underlying constitutional violation, there can be no § 1983 liability imposed on the [defendant]." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) (emphasis omitted). DISD argues that the Amended Complaint does not allege an underlying constitutional violation because it does not state a valid claim for a violation of A.I.'s constitutional right to due process, equal protection, or medical care.

###### 1. *Due Process*

To state a claim under the Due Process Clause, Plaintiff "must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th

4

Cir. 1995) (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991)). Plaintiff alleges that A.I. had a substantive and procedural due process right in the form of "a liberty interest in her bodily integrity" and that the punishment to which she was subjected deprived her of that interest. Am. Compl. ¶ 71.

In procedural due process claims, "what is unconstitutional is the deprivation of [a constitutionally protected] interest *without due process of law.*" *Morris v. Livingston*, 739 F.3d 740, 750 (5th Cir. 2014) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). The Supreme Court has held that "the Due Process Clause does not require notice and a hearing prior to the imposition of corporal punishment in the public schools, as that practice is authorized and limited by the common law." *Ingraham v. Wright*, 430 U.S. 651, 682 (1977). Rather, the availability of post-deprivation state-law remedies satisfies the requirements of due process. *See id.* at 674-82. Under Texas law, educators who administer excessive corporal punishment may be held civilly or criminally liable. *See, e.g., Cunningham v. Beavers*, 858 F.2d 269, 272 (5th Cir. 1988) (finding that Texas provides common law remedies to remedy excessive punishment); TEX. PENAL CODE ANN. § 9.62. Because post-deprivation remedies are available in Texas, the Court must dismiss Plaintiff's procedural due process claim.

As to substantive due process, corporal punishment in public schools constitutes a deprivation of substantive due process "when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 875 (5th Cir. 2000) (quoting *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990)). When a state proscribes and provides a remedy for student mistreatment, an educator cannot be found to have acted arbitrarily. *Id.* And, "discipline is clearly a legitimate state goal" because "[i]t must be maintained in school classrooms and gymnasiums to create an atmosphere

5

in which students can learn." *Id.* In light of these principles, the Fifth Circuit has held that the constitutional right to bodily integrity is not implicated when "the conduct complained of is corporal punishment—even unreasonably excessive corporal punishment—intended as a disciplinary measure" so long as "the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions." *Id.* (emphasis omitted) (quoting *Fee*, 900 F.2d at 808).

Therefore, if Plaintiff has an adequate remedy under Texas law for A.I.'s alleged mistreatment, she cannot state a constitutional claim. Texas law forbids excessive corporal punishment. *See id.* (citing TEX. PENAL CODE ANN. § 9.62; TEX. EDUC. CODE ANN. § 22.051(a)).[2] And, the Fifth Circuit has found that these remedies, along with Texas's traditional common-law remedies, are adequate. *Id.* at 876 (citing *Cunningham*, 858 F.2d at 272). Thus, under Fifth Circuit precedent, these provisions of Texas law preclude Plaintiff from prevailing on a substantive due process claim against DISD.[3]

### 2. *Equal Protection*

To state a claim under the Equal Protection Clause, Plaintiff must allege that (1) A.I. "received treatment different from that received by similarly situated individuals" and (2) "the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)). To establish discriminatory intent, Plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for

---

[2] The Texas Education Code was amended in 2003. Section 22.051(a) is now § 22.0511(a). *See* 2003 Tex. Gen. Laws 889-90. The relevant language otherwise remained unchanged. *See id.*
[3] Plaintiff also claims that DISD's alleged failure to train and supervise its staff "rises to the level of a violation of the Due Process Clause." Am. Compl. ¶ 70. As explained below, the Court finds that Plaintiff did not sufficiently plead claims for failure to train or supervise. *See infra* § III(A)(i)(c).

6

the purpose of causing its adverse effect on an identifiable group." *Id.* "[D]isparate impact alone cannot suffice to state an Equal Protection violation . . . ." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citing *Washington v. Davis*, 426 U.S. 229, 246-50 (1976)).

DISD argues that the Amended Complaint relies solely on allegations of disparate impact. Plaintiff does not address this argument, or even mention her equal protection claim, in her Response.[4] The Court finds that Plaintiff's equal protection claim is based only on disparate impact, rather than unequal treatment stemming from a discriminatory intent. In fact, Plaintiff states that "Washington treated boys and girls the same" and that all students were subject to the same ceiling jump punishment. Am. Compl. ¶¶ 38, 43. Plaintiff does not allege either that DISD singled out females for disparate treatment or that A.I. received treatment different from that received by similarly situated males. Instead, Plaintiff argues that A.I. received the same treatment as males, even though she should have been treated differently due to her "unique needs as a female." *Id.* ¶ 80. Because disparate impact claims are not actionable under the Equal Protection Clause, the Court dismisses Plaintiff's § 1983 claim based on a purported equal protection violation.

### 3. *Medical Care*

Plaintiff asserts that the school nurse denied A.I. her constitutional "right to receive adequate emergency and/or medical treatment." *Id.* ¶ 83.[5] The right to receive medical care "is premised on the existence of a special relationship that is lacking between public schools and their students." *Ryburn v. Giddings Indep. Sch. Dist.*, 1:16-CV-879-RP, 2017 WL 3821691, at *6 (W.D.

---

[4] Because of this omission, it is unclear to the Court whether Plaintiff intended to bring an equal protection-based § 1983 claim against DISD. However, DISD addresses this claim in its Motion to Dismiss. Out of an abundance of caution, the Court will conduct its analysis as though Plaintiff intended to bring such a claim.

[5] Again, it is unclear whether Plaintiff intends to assert this claim against DISD. Because DISD addresses the claim in its Motion to Dismiss, the Court will conduct its analysis as though Plaintiff did intend to bring such a claim.

7

Tex. Aug. 31, 2017) (citing *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 859 (5th Cir. 2012)). Even if a special relationship did exist, the Court views Plaintiff's allegations that Bachand failed to take "reasonable steps to avoid further harm to A.I.," Am. Compl. ¶ 83, as stating a claim for negligence that is not actionable under § 1983. *See Ryburn*, 2017 WL 3821691, at *6 (citations omitted); *see also Myers v. Troup Indep. Sch. Dist.*, 895 F. Supp. 127, 130 (E.D. Tex. 1995) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." (citation omitted)). Therefore, the Court dismisses Plaintiff's § 1983 claim based on the alleged denial of A.I.'s right to receive medical care.

### b. *Municipal Liability*

Even if Plaintiff successfully pleaded an underlying constitutional violation, the Court finds that she has not established a basis for DISD's liability. Municipal liability under § 1983 has three required elements: "a policymaker; an official policy [or a custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). "Under Texas law, the final policy-making authority in an independent school district rests with the district's board of trustees." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (citing *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)).

Plaintiff does not identify an actual policy that led to the alleged violation of A.I.'s constitutional rights. Plaintiff also does not identify "[a] persistent, widespread practice . . . which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 759 (5th Cir. 1986) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th

8

Cir. 1984) (en banc) (per curiam)). If Plaintiff intends to rely on such a custom, she must also establish that actual or constructive knowledge of the custom can be attributed to the Board. *Id.* Plaintiff has failed to plead that that "the Board knew of [Washington's] behavior or condoned it." *Fennell*, 804 F.3d at 413 (quoting *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 250 (5th Cir. 2003)). At most, Plaintiff alleges that DISD staff "had a practice and custom of looking the other way when Washington violated . . . Board policies and procedures by using exercises for punishment." Resp. 21. Even if Plaintiff pleaded sufficient facts to establish that such a practice and custom existed, which she has not, Plaintiff has not pleaded any basis for imputing the knowledge of these unidentified staff members to the Board. For this additional reason, the Court dismisses Plaintiff's § 1983 claims premised on alleged constitutional violations.

### c. *Failure to Train*

As an alternate basis for imposing § 1983 liability on DISD, Plaintiff asserts a failure to train claim. Plaintiff contends that DISD failed to train its staff "about the differences in ma[l]e and female anatomy and how it should [a]ffect the provision of [P.E.]." Am. Compl. ¶ 65. To state a claim for failure to train, a plaintiff must allege: "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (citation omitted).

A failure to train claim requires a constitutional violation. The Court previously found that A.I. did not suffer a violation of a constitutional right, so she cannot state a claim for failure to train. Moreover, Plaintiff has failed to plead the second element of a failure to train claim— deliberate indifference. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [its] action." *Bd. of Cty.*

9

*Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). To establish that a municipal actor disregarded a known or obvious consequence of its action, a plaintiff must plead that the actor had actual or constructive notice "that a particular omission in [its] training program causes . . . employees to violate [students'] constitutional rights" but "[chose] to retain that program" anyway. *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference[.]" *Id.*

Here, Plaintiff does not allege a pattern of constitutional violations by untrained employees. At most, she alleges that "at least five female students had gone to the nurse in the recent past complaining of pain from the ceiling jumps." Am. Compl. ¶ 48. Without more, this allegation does not establish a pattern of similar constitutional violations. And, even if it did, Plaintiff does not allege facts supporting the contention that DISD knew about the prior injuries. Plaintiff alleges in conclusory fashion that Dickerson knew about the "problem" and that Bachand and Washington knew that five female students had experienced pain after doing ceiling jumps. Am. Compl. ¶¶ 5, 48. These vague and unsupported allegations of knowledge do not support the conclusion that DISD was deliberately indifferent.

Where, as here, a plaintiff cannot establish a pattern of constitutional violations, there is a "narrow" exception available: the "single incident exception." *Estate of Davis*, 406 F.3d at 385. To rely on this exception to show deliberate indifference, Plaintiff must establish (1) that the specific injury suffered was a "highly predictable" consequence of the failure to train and (2) that the failure to train was the "moving force" behind the constitutional violation. *Id.* at 385-86 (citation omitted). Plaintiff has not pleaded any facts supporting a finding that A.I.'s specific injury was a highly predictable consequence of the alleged failure to train. Further, Plaintiff cannot

show that the alleged failure was the moving force behind a constitutional violation. The Court has previously found that A.I.'s constitutional rights were not violated. For this reason and for all of the reasons stated above, the Court finds that Plaintiff has not adequately pleaded a failure to train claim.

#### d. *Failure to Supervise*

Plaintiff also contends that DISD "failed to supervise its staff as to the law, their duties and responsibilities thereunder, regulations related thereto[,] and professional standards of care." Am. Compl. ¶ 70. To state a claim for failure to supervise, a plaintiff must allege that: (1) a supervisor failed to supervise a subordinate official; (2) a causal link exists between the failure to supervise and the violation of the plaintiff's (or, in this case, the plaintiff's daughter's) rights; and (3) the failure to supervise amounts to deliberate indifference. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)).

A failure to supervise claim requires a constitutional violation and deliberate indifference. The Court previously found that A.I. did not suffer a violation of a constitutional right and that Plaintiff did not sufficiently plead deliberate indifference. Even if she had, however, Plaintiff has not sufficiently pleaded the first element of her failure to supervise claim. Plaintiff alleges in conclusory fashion that DISD "failed to supervise its staff as to the law, their duties and responsibilities thereunder, regulations related thereto[,] and professional standards of care." *Id.* ¶ 70. There is only one factual allegation supporting this contention: "[T]he failure of Dickerson and [Bachand] . . . to prevent Washington from continuing in his abusive ways . . . present[s] evidence, and a strong inference, that [DISD] failed to effectively assure staff was . . . supervised with the applicable and requisite professional standards of care[.]" *Id.* ¶ 7. Viewing the Amended

Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has not adequately pleaded that DISD failed to supervise a subordinate official.

For the foregoing reasons, the Court dismisses Plaintiff's failure to supervise claim.

### ii. *Title IX Claim*

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). School districts are liable for damages under Title IX "only where the district itself intentionally act[s] in clear violation of Title IX." *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277, 290 (1998)). To be held liable, a school district must have actual notice of a violation and respond with deliberate indifference. *See Gebser*, 524 U.S. at 290.[6]

As discussed above, Plaintiff alleges facts supporting a disparate impact claim, not intentional discrimination. *See supra* § III(A)(i)(a)(2). In her Response, Plaintiff contends that "A.I. has provided a number of facts that [sic] she was treated differently than her male counterparts" and that "A.I. and the other female students at [DISD] were treated differently than their male counterparts during athletic activities." Resp. 18-19. These contentions are not supported by the facts alleged in the Amended Complaint. *See, e.g.*, Am. Compl. ¶ 43 ("Washington treated boys and girls the same[.]").

Because the Court finds that Plaintiff's factual allegations only support a potential disparate impact claim, the Court must consider whether disparate impact claims are viable under Title IX. In *Alexander v. Sandoval*, the Supreme Court concluded that under Title VI, on which Title IX is

---

[6] In her Response, Plaintiff refers to this concept as a "heightened risk analysis." Resp. 15 (citing *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602 (W.D. Tex. 2017)).

12

patterned, there is no private right of action to enforce disparate impact claims. 532 U.S. 275, 280-81 (2001). While the Fifth Circuit has not addressed the issue since *Sandoval* was decided, courts within the Fifth Circuit and around the country have interpreted *Sandoval* as allowing a private right of action to enforce disparate treatment claims only. *See, e.g., Manley v. Tex. S. Univ.*, 107 F. Supp. 3d 712, 726 (S.D. Tex. 2015); *see also Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 657 n.3 (W.D. Tex. 2017) ("Most courts that have considered whether Title IX allows a disparate impact claim have held that it does not."). Prior Fifth Circuit decisions are consistent with this interpretation. *See, e.g., Fort v. Dall. Indep. Sch. Dist.*, No. 95-10323, 1996 WL 167072, at *3 (5th Cir. Mar. 11, 1996) ("[T]o establish a claim under Title IX, the plaintiff must establish that an educational institution receiving federal assistance intentionally discriminated on the basis of the plaintiff's sex." (citations omitted)).

Based on the Court's interpretation of Fifth Circuit precedent, which finds support in the decisions of other courts in the Fifth Circuit, the Court finds that Title IX does not provide a remedy for a disparate impact claim such as Plaintiff's. Notably, Plaintiff cites no authority for the proposition that a disparate impact claim may be brought under Title IX and does not address caselaw to the contrary in her Response.

Even if Plaintiff's claim were viable under Title IX, Plaintiff has not alleged any facts supporting her allegation that DISD had actual notice of discrimination and responded with deliberate indifference. To establish school district liability under Title IX, a plaintiff must allege that an "appropriate person" had actual knowledge of the alleged discrimination. *Gebser*, 524 U.S. at 290. An appropriate person is "an official of the recipient entity with authority to take corrective action to end the discrimination." *Id.*

Here, Plaintiff contends "Dickerson . . . knew about the problem." Am. Compl. ¶ 5. While Dickerson, as principal of the school, may be an appropriate person for Title IX purposes, Plaintiff does not provide factual allegations supporting her conclusory assertion about Dickerson's knowledge. Plaintiff alleges that Bachand also knew about the problem and did not do "anything to address the problem." *Id.* at ¶¶ 5, 48. Plaintiff does not allege that Bachand had authority to take corrective action. And, she only alleges that Bachand knew that five female students experienced pain from ceiling jumps. Plaintiff does not allege facts supporting the conclusion that Bachand knew that Washington was discriminating against female students. Finally, Plaintiff alleges that Washington "knew that at least five female students had gone to the nurse in the recent past complaining of pain from the ceiling jumps." *Id.* ¶ 48. "[H]owever, the knowledge of the wrongdoer himself is not pertinent to the analysis" of whether a school district had actual notice. *Gebser*, 524 U.S. at 291.

Plaintiff also has not pleaded any facts to show that an appropriate person or DISD responded with deliberate indifference. Plaintiff does not allege how DISD handled the first five injuries, and, as discussed in the preceding paragraph, there is no evidence that DISD was aware of these injuries. With regard to A.I.'s injury, Plaintiff herself notes that "[a]fter the incident Child Protective Services . . . and [DISD] conducted . . . investigations of . . . Washington." Am. Compl. ¶ 59. "The [DISD] Investigator found violations for student discipline, corporal punishment, and student welfare and wellness against . . . Washington." *Id.* ¶ 60. The Court therefore cannot infer from these facts that DISD responded to the alleged discrimination with deliberate indifference.

For all of the foregoing reasons, the Court grants DISD's Motion to Dismiss Plaintiff's Title IX claim.

### B. *Washington's Motion to Dismiss*

Plaintiff asserts § 1983 claims and a state-law claim against Washington. Washington moves to dismiss the § 1983 claim.

#### i. *Section 1983*

As noted above, to state a § 1983 claim, Plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Leffall*, 28 F.3d at 525. Plaintiff alleges that Washington violated A.I.'s constitutional rights to due process and equal protection. Washington argues that Plaintiff has not stated a § 1983 claim because she has not adequately pleaded that Washington violated A.I.'s constitutional rights. The Court discussed the deficiencies in Plaintiff's pleadings at length above, *see supra* § III(A)(i)(a)(1)-(2), and will only address the arguments specific to Washington below.

First, because Texas law provides adequate remedies for alleged excessive discipline, Plaintiff cannot state a procedural or substantive due process claim against Washington. *See supra* § III(A)(i)(a)(1). Plaintiff's argument that the principles discussed above apply only to the individual who administered the punishment is unavailing. *See Moore*, 233 F.3d at 874 ("We have held consistently that, as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment, *whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage*." (emphasis added)).

In her Response to Washington's Motion to Dismiss, Plaintiff acknowledges the Fifth Circuit's holding in *Moore* but argues that "there is fair question as to whether or not the [Fifth] Circuit's reasoning is constitutionally sound." Resp. ¶ 21 (citing 233 F.3d at 878-79). "In fact,"

Plaintiff continues, "no other circuit has followed the [Fifth] Circuit's decision i[n] *Moore*." *Id.* Fifth Circuit precedent is binding on this Court; therefore, this Court shall follow it. For all of the reasons stated above, the Court finds that Plaintiff has not adequately pleaded that Washington violated A.I.'s constitutional right to due process.

Second, Plaintiff has not pleaded an equal protection claim because she has not alleged that Washington singled out females for disparate treatment or that A.I. received treatment different from that received by similarly situated males. Plaintiff argues that "A.I. has a plausible equal protection claim because the exercise policy[,] while neutral on its face, had a disparate effect upon her and other female students." Resp. ¶ 2. As discussed above, equal protection claims require intentional discrimination. Plaintiff also argues that A.I. "has a right to receive equal benefits to a public education as compared to other students, who also took [P.E.] classes and were not injured by Washington's directives." *Id.* Like the prior allegation, this assertion does not show intentional discrimination. Rather, Plaintiff is essentially arguing that Washington issued "directives" to all of his students but that only A.I. and perhaps five other female classmates were injured as a result of following those directives. For the foregoing reasons, the Court finds that Plaintiff has failed to state an equal protection-based § 1983 claim against Washington.

Neither Washington nor Plaintiff addresses the right to medical care claim in their briefing, and the Court construes Plaintiff's Amended Complaint as only asserting this claim against Bachand. While Plaintiff mentions "each of the individuals" in the context of this claim, she only specifically names Bachand. Am. Compl. ¶¶ 82-83. Therefore, the Court will not examine the merits of this claim with regard to Washington.

### ii. *State Law*

Washington does not address Plaintiff's Texas Education Code claim in his Motion to Dismiss. Texas Education Code § 22.0511 provides:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

TEX. EDUC. CODE § 22.0511(a). This section, standing alone, does no more than provide employees immunity in certain situations. *See, e.g., Crook v. Galaviz*, No. EP-CV-193-KC, 2015 WL 502305, at *12 (W.D. Tex. Feb. 5, 2015) ("Section 22.0511 of the Texas Education Code provides a school district's professional employees with immunity for certain acts[.]"); *Doe v. S&S Consol. Indep. Sch. Dist.*, 149 F. Supp. 2d 274, 297 (E.D. Tex. 2001) (finding that the language of § 22.0511(a) "does not affirmatively create rights for a plaintiff").[7] Therefore, § 22.0511 does not provide an independent cause of action against Washington.

### C. *Dickerson and Bachand's Motion to Dismiss*

Plaintiff asserts § 1983 claims against Dickerson and Bachand. Dickerson and Bachand assert that they are entitled to qualified immunity. "Generally, government officials are 'immune from civil damages if their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known.'" *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (quoting *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004)). The qualified immunity defense is analyzed in two parts. First, a court must decide whether the plaintiff's allegation, taken

---

[7] *Doe* cites to § 22.051 of the Texas Education Code. As noted above, the Code was amended in 2003, altering the numeration of the immunity provision. The relevant language otherwise remained unchanged. *See* 2003 Tex. Gen. Laws 889-90.

17

as true, establishes a violation of a clearly established right. *Id.* Second, a court must decide whether the official's conduct was objectively reasonable in light of clearly established law at the time of the incident. *Id.* Courts can resolve either element first and need not proceed to the second if the first is resolved in the negative. *Id.* Once a defendant properly invokes qualified immunity, the plaintiff bears the burden to establish that the official's conduct violated a clearly established right of which a reasonable person in the official's position would have known. *See Modica v. Taylor*, 465 F.3d 174, 179 (5th Cir. 2006).

The Court finds that Plaintiff has not established a violation of a clearly established constitutional right. The Court has addressed the deficiencies in the alleged violations at length above and will only briefly review them here. First, because Texas law provides adequate remedies for alleged excessive discipline, Plaintiff cannot state a procedural or substantive due process claim against Dickerson or Bachand. *See supra* § III(A)(i)(a)(1).

Second, Plaintiff has not pleaded an equal protection claim because she has not alleged that Dickerson and/or Bachand singled out females for disparate treatment or that A.I. received treatment different from that received by similarly situated males. In her Response, Plaintiff contends that Dickerson and Bachand violated A.I.'s right to equal protection by "fail[ing] to provide her the same safety measures given other students who did not take [P.E.] with . . . Washington." Resp. ¶ 42. However, there are no facts supporting this argument in the Amended Complaint, which focuses on discrimination based on sex, gender, and gender stereotypes. Am. Compl. ¶¶ 79-80. For this reason, along with those stated above, the Court finds that Plaintiff has not adequately pleaded that Dickerson or Bachand violated A.I.'s constitutional right to equal protection.

Third, there is no clearly established right to medical care in the public-school setting. And, in the absence of an allegation that A.I. went to see Bachand after her injury, it is unclear how Bachand[8] could have denied A.I. "her right to receive adequate emergency and/or medical treatment." *Id.* ¶ 83. Therefore, the Court finds that Plaintiff has not successfully pleaded that Bachand violated A.I.'s clearly established right to medical care.

Finally, Plaintiff cannot rely on a supervisory liability theory to establish that Dickerson violated A.I.'s clearly established rights. Supervisory liability requires a plaintiff to "show either [that] the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) (quoting *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003)). "It is facially evident that this test cannot be met if there is no underlying constitutional violation." *Id.* (citation omitted). As discussed throughout this Opinion, the Court finds no underlying constitutional violation and thus no basis for supervisory liability.[9]

Because Plaintiff has not established that either Bachand or Dickerson violated a clearly established constitutional right, the Court finds that Bachand and Dickerson are both entitled to qualified immunity. Therefore, the Court grants their Motion to Dismiss in its entirety.

## IV. CONCLUSION

For the foregoing reasons, the Court grants DISD, Washington, Bachand, and Dickerson's Motions to Dismiss. The Court grants Plaintiff's request for leave to amend except with regard to her due process- and right to medical care-based § 1983 claims. The Court finds that repleading

---

[8] Based on the Amended Complaint and the parties' briefing, the Court construes Plaintiff's pleadings as asserting the denial of medical care claim against Bachand only. Even if Plaintiff intended to assert the claim against Dickerson, the Court would dismiss it for the reasons discussed previously. *See supra* § III(A)(i)(a)(3).

[9] In her Response, Plaintiff argues that Dickerson failed to train or supervise Washington and acted with deliberate indifference. The factual allegations in the Amended Complaint do not support this argument.

19

those claims would be futile and thus dismisses them with prejudice. *See Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 364 (5th Cir. 2012) ("Denial of leave to amend may be warranted for . . . futility of a proposed amendment." (citation omitted)). Plaintiff must file an amended complaint no later than July 22, 2019.

**SO ORDERED.**

SIGNED June 21, 2019.

_____
**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**